UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 22-124(7) (NEB/DTS)

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **GOVERNMENT'S RESPONSE TO** |
| v. ) | **DEFENDANT'S POSITION** |
| ) | **REGARDING SENTENCING AND** |
| MUKHTAR MOHAMED SHARIFF, ) | **OBJECTIONS TO PSR** |
| ) | |
| Defendant. ) | |

The United States of America, by and through its attorneys, Lisa D. Kirkpatrick, Acting United States Attorney for the District of Minnesota, and Joseph H. Thompson, Harry M. Jacobs, Matthew S. Ebert, and Daniel W. Bobier, Assistant United States Attorneys, submits the following response to defendant's position regarding sentencing and objections to the PSR. Dkt. ##636, 667.

## I.    BACKGROUND

Defendant Mukhtar Shariff participated in the largest Covid-19 fraud scheme in the United States—a scheme in which he and his co-conspirators stole tens of millions of dollars federal child nutrition program funds intended to feed disadvantaged children. During the trial, Shariff disregarded the fundamental rules of courtroom conduct by recording hours and hours of witness testimony. At the end of the trial, Shariff attempted to destroy a video of his co-defendants' attempt to bribe a trial juror and pay her $120,000 in cash in exchange for a not guilty verdict. Shariff's crimes have shaken Minnesota to its core—both in terms of the brazen and staggering

nature of the fraud and the complete disrespect and contempt shown for the criminal justice system. His crimes have changed the state forever, and not for the better.

The Court must send a message in the strongest possible terms to Shariff and anyone else who believes they can shamelessly take advantage of state and federal programs, steal with impunity money intended for children, and abuse the rights afforded by the criminal justice system.

### A.    Shariff's Objections to the Offense Conduct

Shariff raises an array of objections to the PSR's description of the offense conduct. Dkt. #636. In doing so, he essentially re-raises the same trial defenses that the jury rejected.

His objections fall into several general categories.

First, Shariff objects to the PSR's description of Afrique Hospitality Group and his role in Afrique. *See, e.g.*, Dkt. #636 at 2-3. As in his trial testimony, Shariff attempts to distance himself from the organization he created and led as CEO. But the PSR accurately describes Afrique as an entity that Shariff created and used to receive and launder fraudulently obtained federal child nutrition program funds. Shariff registered Afrique with the Minnesota Secretary of State on January 6, 2021. As the Court heard at trial and saw in the PowerPoint outlining the Afrique business plan, Shariff created Afrique to build and operate a for-profit cultural center using federal child nutrition program funds. *See* Gov't Ex. G-110.

2



Almost immediately, the food site Shariff ran at Dar al Farooq began claiming to be serving meals to 2,000 children a day. *See, e.g.*, Gov't Ex. C-361. Within a month, the site claimed to be serving meals to 3,500 children a day. *See, e.g.*, Gov't Ex. C-360.

Second, Shariff attempts to distance himself from the actions of his co-conspirators by requesting that the offense conduct change the phrase "the defendants" to "some of the defendants, not including Mukhtar Shariff." Dkt. #636 at 4. In doing so, he ignores basic conspiracy law, which holds that conspirators are responsible for the actions of their co-conspirators. Here, having ran the largest fraudulent food distribution site involved in this indictment, and having received and laundered fraudulent proceeds from an array of individuals and entities involved in the larger scheme to defraud the federal child nutrition program, Shariff cannot now disclaim responsibility for the full scope of the fraud scheme.

Third, Shariff insists that Wadani Consulting and Nomadic Ventures were not created for use in receiving and laundering fraud proceeds. This is wrong. Shariff registered Wadani Consulting on January 6, 2021—the same day that he registered Afrique Hospitality Group LLC. *See* Gov't Ex. B-7 and B-8. Shariff opened an account in the name of Wadani Consulting on February 16, 2021. *See* Gov't Ex. O-53. Over

the course of the next 10 months, Shariff deposited more than $480,000 into the

Wadani Consulting account, including $200,000 from Afrique, $80,000 from Empire

Enterprises, and $39,000 from Empire Cuisine & Market. Gov't Ex. M-31, O-53 at

126, 138, 145.



As shown in Government Exhibit M-31, almost all of the funds that Shariff deposited

into the Wadani Consulting account were the proceeds of his fraud scheme.

**Wadani Consulting**
**Bank of America, Checking Account #374005051586**
**Period of Review: 2/16/2021 (Open) - 12/31/2021**

| SOURCES OF FUNDS | Total Deposits | | USES OF FUNDS | Total Withdrawals |
|---|---|---|---|---|
| Afrique Hospitality Group LLC | $ 206,391.00 | | Nomadic Ventures LLC | $ (100,000.00) |
| Other Income | $ 96,601.04 | | ATC Holdings LLC | $ (91,621.69) |
| Empire Enterprises LLC | $ 80,000.00 | | Other Expense | $ (68,918.49) |
| Empire Cuisine and Market LLC | $ 39,186.00 | | Mukhtar Shariff | $ (63,291.00) |
| Other Expense | $ 28,006.10 | | Mustaf Shariff | $ (55,000.00) |
| Gar Gaar Family Services | $ 5,000.00 | | Travel Expenses | $ (41,834.86) |
| Mukhtar Shariff | $ 3,025.00 | | Individuals | $ (17,594.80) |
| **Grand Total\*** | **$ 482,008.34** | | A&E Logistics LLC | $ (10,001.00) |
| | | | Cash | $ (8,182.50) |
| | | | Assets - Vehicle Expense | $ (774.03) |
| | | | **Grand Total\*** | **$ (457,218.37)** |

4

Similarly, Shariff did not register Nomadic Ventures LLC until September 20, 2021. Gov't Ex. B-28. Shariff then opened an account in the name of Nomadic Ventures LLC on October 15, 2021. Gov't Ex. O-51. Shariff did not use the company to conduct legitimate, lawful business. He used it to receive and launder fraud proceeds. The first significant deposit into the account was a $100,000 wire transfer from Wadani Consulting on November 5, 2021. Gov't Ex. O-51 at 11. The following month, Shariff deposited an $80,000 check from Empire Cuisine and Market. Gov't Ex. O-51 at 82.



## B.    Shariff's Objection to the Loss Calculation

The PSR correctly applied a 22-level enhancement because the loss amount was more than $25 million but less than $65 million. PSR ¶109.

Guidelines section 2B1.1 provides that the loss amount is "the greater of the actual loss or intended loss." Guidelines § 2B1.1(b)(1), app. Note 3. The government must prove the intended loss by a preponderance of the evidence. *United States v. Holthaus*, 486 F.3d 451, 454 (8th Cir. 2007). "The district court's method for calculating the amount of loss must be reasonable, but the loss need not be determined with precision." *United States v. Hodge*, 588 F.3d 970, 973 (8th Cir. 2009)

(quoting *United States v. McIntosh*, 492 F.3d 956, 960–61 (8th Cir.2007)). "Because the damage wrought by fraud is sometimes difficult to calculate, a district court is charged only with reasonably estimating the loss using a preponderance of evidence standard." *United States v. Alexander*, 679 F.3d 721, 731 (8th Cir. 2012) (quoting *United States v. McKanry*, 628 F.3d 1010, 1019 (8th Cir. 2010)). Appellate courts "accord particular deference to the loss determination because of the district court's unique ability to assess the evidence and estimate the loss." *United States v. Scott*, 448 F.3d 1040, 1044 (8th Cir. 2006) (internal citations omitted).

As shown and presented at trial in Government Exhibits N-3 and N-5, the defendants submitted to MDE reimbursement claims for more than $49 million in federal child nutrition program funds. Of this, MDE paid out approximately $47,920,514 to the entities that sponsored the defendants' participation in the program, Partners in Nutrition and Feeding Our Future.[1] Those sponsors, in turn, retained approximately $5.6 million in administrative fees. The sponsors then paid over approximately $42,407,515 to Empire Cuisine & Market, ThinkTechAct, and other entities owned or controlled by the defendants, including more than $21 million to ThinkTechAct and more than $12 million to Empire Cuisine & Market.

---

[1]    Pursuant to Guidelines § 5E1.1, Shariff and his co-defendants owe restitution for the full amount of the victim's loss. Accordingly, the Court should order Shariff to pay $47,920,514 in restitution.



As depicted in Government Exhibit N-3, in addition to the more than $36 million received by the entities owned by the defendants themselves, more than $6 million in federal child nutrition program funds were sent by Partners in Nutrition and Feeding Our Future to other non-profit entities used as part of the scheme, including Somali Community Resettlement Services, The Free Minded Institute, and St. Cloud Somali Athletic Club. The government introduced at trial bank records and summary charts showing the flow of funds into and out of these entities.[2]

---

[2]    See, e.g., Gov't Ex. M-28, O-144, and O-145 (Somali Community Resettlement Services); M-29 and O-141 (The Free Minded Institute); M-27 and O-152 (St. Cloud Somali Athletic Club); M-14 (Madina Grocery Inc.); and M-24, O-136, and O-137 (New Prospect Learning Inc.).



As shown at trial, after receiving the federal child nutrition program funds, the defendants transferred the funds to and through a variety of entities to launder the funds. For example, ThinkTechAct—the non-profit company under which most of the sites were opened—received more than $21 million in federal child nutrition program funds in 2021.[3] Gov't Ex. M-30. More than $1.7 million of these funds were sent from ThinkTechAct to Shariff's company, Afrique. This was in addition to the millions in federal child nutrition program funds that Afrique received directly from Feeding Our Future and from other entities involved in the fraudulent receipt of federal child nutrition program funds. *See* Gov't Ex. M-6.

Almost all of the federal child nutrition program funds were transferred into four companies set up and used by the conspirators as part of the scheme, including ThinkTechAct Foundation (Mahad Ibrahim and Abdiaziz Farah), Empire Cuisine &

---

[3]      In addition to the summary chart, the government introduced at trial records of ThinkTechAct Foundation's bank account. Gov't Ex. O-17.

Market (Abdiaziz Farah and Mohamed Ismail), Empire Enterprises (Abdiaziz Farah and Abdimajid Nur), Afrique Hospitality Group (Mukhtar Shariff and Mahad Ibrahim), and Bushra Wholesalers (Said Farah and Abdiwahab Aftin).[4]

At trial, the government introduced a chart summarizing all funds that flowed into, and out of, the various bank accounts opened in the names of these entities. Gov't Ex. M-1. This chart showed not only the more than $42 million in federal child nutrition program funds deposited into the accounts (outlined in blue), but also accounted for all food purchases by the defendants and their entities (outlined in red).

---

[4]    At trial, the government introduced records of the bank accounts opened on behalf of Afrique Hospitality Group and Bushra Wholesalers along with charts summarizing all funds flowing into and out of those accounts. *See* Gov't Ex. M-6, M-6b, O-20, O-21, and O-22 (Afrique Hospitality Group), Gov't Ex. M-13a, O-7, O-8, and O-9 (Empire Cuisine & Market), Gov't Ex. M-13z, O-11, and O-12 (Empire Enterprises), and Gov't Ex. M-10, M-10d, O-24, O-25, and O-26 (Bushra Wholesalers).

"THE BIG FOUR" - Empire, ThinkTechAct, Bushra, Afrique
Period of Review: 5/12/2020 to 6/14/2022

| SOURCES OF FUNDS | Total Deposits | | USES OF FUNDS | Total Withdrawals |
|---|---|---|---|---|
| Partners in Nutrition | $ 29,831,430.64 | | Legal Order - Bank Account Seizures | $ (7,632,616.23) |
| Feeding Our Future | $ 6,085,264.78 | | Related Parties | $ (6,959,229.57) |
| Related Parties | $ 4,955,949.77 | | Defendants' Personal Accounts | $ (5,325,678.91) |
| Other Food Program Income | $ 1,786,985.67 | | Food Expense | $ (5,094,088.82) |
| Credit Card Income | $ 1,062,943.76 | | Assets - Real Estate Purchases and Construction | $ (4,805,311.00) |
| Investment Income | $ 886,000.00 | | Defendants' Other Entities | $ (4,172,909.88) |
| Defendants' Personal Accounts | $ 456,302.24 | | Foreign Transfers | $ (3,185,568.20) |
| Misc. Other Income | $ 244,192.14 | | Payments to Other Individuals | $ (2,815,602.08) |
| Defendants' Other Entities | $ 199,985.00 | | Misc. Other Expenses | $ (1,201,263.74) |
| Transportation and Logistics Companies | $ 179,464.01 | | Transportation and Logistics Companies | $ (1,080,258.73) |
| Mizal Consulting LLC / Hadith Ahmed | $ 139,000.00 | | Assets - Vehicle Expenses and Purchases | $ (733,759.33) |
| Assets - Real Estate Purchases and Construction | $ 122,648.74 | | Cash Out | $ (522,302.33) |
| Afro Produce LLC | $ 71,359.37 | | Rent Expense | $ (517,932.97) |
| Math Tech Tutoring LLC | $ 55,325.00 | | Commercial Equipment and Supplies | $ (506,667.86) |
| Payments from Other Individuals | $ 47,000.00 | | Personal Non-Food Expense | $ (273,000.00) |
| Truck Rental | $ 23,285.19 | | Ikram Y. Mohamed | $ (250,000.00) |
| Mind Foundry Learning Inc. | $ 21,353.41 | | Investment Income | $ (210,000.00) |
| Cash In | $ 11,530.00 | | Undetermined Category | $ (176,000.00) |
| Restaurant Supplies / Equipment | $ 4,531.13 | | Mizal Consulting LLC / Hadith Ahmed | $ (160,662.26) |
| Rent Expense | $ 2,880.00 | | Restaurant Supplies / Equipment | $ (140,250.00) |
| Misc. Other Expenses | $ 1,117.50 | | Mind Foundry Learning Inc. | $ (132,057.00) |
| Food Expense | $ 1,014.82 | | Truck Rental | $ (117,131.85) |
| Grand Total* | $ 46,189,563.17 | | Star Distribution LLC | $ (89,203.52) |
| | | | | $ (51,300.00) |
| | | | Xogmaal Production | $ (12,500.00) |
| | | | Domino's | $ (12,331.30) |
| | | | Entertainment | $ (12,014.34) |
| | | | Grand Total* | $ (46,189,634.92) |

*Excludes intercompany transfers and returned items due to insufficient funds.

GOVERNMENT EXHIBIT
M-1
22-cr-124 (NEB/TNL)

These food purchases—which totaled approximately $5,106,102—included all food purchases by the entities, including a significant amount of money spent on "food" that had nothing to do with the federal child nutrition program. For example, Empire Cuisine & Market operated a small halal deli and market located in a strip mall in Shakopee, Minnesota. As depicted in Government Exhibit M-1, the market had more than $1 million in credit card receipts during the time of the fraud scheme. In other words, regular customers spent more than $1 million buying food at Empire Cuisine & Market. As FBI Forensic Accountant Pauline Roase testified at trial, the funds credited to "food" on Government Exhibit M-1 and other summary charts introduced at trial included money spent to purchase food and other items (such as halal meat and baby formula) for sale at the market. And as the Court saw, many of

the defendants' food invoices were for the purchase of these types of items unrelated to the food program. *See, e.g.*, Gov't Ex. D-72 at 62-63, 82 (Lincoln Trading International invoices for the purchase of goat meat, lamb kidney, and other halal meats to sell at Empire Cuisine & Market), D-73 (Gold Star Distribution invoices for the purchase of non-food items to be sold at Empire Cuisine & Market), and Q-46 (Capital Imports invoices showing purchase of food unrelated to the federal child nutrition program). Nevertheless, FBI Forensic Accountant Pauline Roase testified that she credited such monies as food expense order to be conservative in her calculations.

Even so, as to Afrique's incoming "sources of funds, Government Exhibit M-6 is underinclusive. It does not account for the fact that Afrique claimed to have been supplying "food" to other entities involved in the broader fraudulent scheme to obtain federal child nutrition program. Afrique received more than $1.3 million from other entities involved in the fraudulent receipt of federal child nutrition program. *See* Gov't Ex. M-6.

**Afrique Hospitality Group LLC**
**Bank of America, Checking Account #374000590835**
**Period of Review: 1/7/2021 - 6/14/2022**

| SOURCES OF FUNDS | Total Deposits |
|---|---|
| ThinkTechAct Foundation | $ 1,783,583.90 |
| Other Food Program Income | $ 1,335,087.37 |
|    Cosmopolitan Business Solutions LLC | 482,024.70 |
|    Star Distribution LLC | 448,040.15 |
|    Inspiring Youth & Out Reach LLC | 169,390.95 |
|    Active Mind's Youth LLC | 139,042.26 |
|    United Youth of Mpls LLC | 96,589.31 |
| Feeding Our Future | $ 1,150,523.55 |
| Investment Income | $ 886,000.00 |
| Empire Cuisine and Market LLC / Empire Enterprises LLC | $ 834,546.00 |
| Related Parties | $ 260,820.00 |
|    Saint Cloud Somali Athletic Club | 260,820.00 |
| Defendants' Personal Accounts | $ 210,020.24 |
| Assets - Real Estate Purchases and Construction | $ 122,168.09 |
| Afro Produce LLC | $ 71,359.37 |
| Bushra Wholesalers LLC | $ 69,396.00 |
| Defendants' Other Entities | $ 60,000.00 |
|    MIB Holdings LLC (Mahad Ibrahim) | 60,000.00 |
| Truck Rental | $ 23,285.19 |
| Misc. Other Income | $ 1,065.01 |
| Grand Total* | $ 6,807,854.72 |

This included more than $480,000 from Cosmopolitan Business Solutions, the company that did business as Safari Restaurant and whose owners have been charged for their participation in the fraudulent scheme to receive federal child nutrition program funds. All of the funds in the Cosmopolitan bank account from which Afrique received the $480,000 consisted of federal child nutrition program funds received from Feeding Our Future or other entities involved in the scheme. Gov't Ex. C-553, C-554, and C-555. And as shown in the summary chart admitted as Gov't Ex. C-553, rather than use those funds to purchase food to feed children, Cosmopolitan sent the funds to a series of entities created and used by conspirators to receive and launder fraud proceeds, including Tunyar Trading (Abdikadir

Mohamud), Horseed Management (Abdinasir Abshir), Brava Restaurant (Sharmake and Ayan Jama), ASA Limited (Abdihakim Ahmed, Salim Said, and Ahmed Ghedi), Olive Management (Ahmed Omar-Hashim), and 3017 LLC (Abdulkadir Salah). Each of these individuals has been charged for their role in defrauding the federal child nutrition program. *See United States v. Aimee Marie Bock, et al.*, 22 CR 223 (NEB/DTS) and *United States v. Sharmake Jama, et al.*, 22 CR 225 (NEB/DTS).



Afrique also received more than $850,000 in federal child nutrition program funds from a series of entities created by Feeding Our Future employee Ikram Mohamed and her family members, including Star Distribution, Inspiring Youth & Out Reach, Active Mind's Youth, and United Youth of Mpls. The individuals who

created and ran these companies have been charged for their role in the fraudulent scheme to obtain federal child nutrition program funds. *See United States v. Ikram Yusuf Mohamed, et al.*, 24 CR 15 (NEB/DTS).

For example, in April and May 2021, Shariff deposited into the Afrique account two checks totaling $169,000 from Inspiring Youth and Outreach LLC. The memo lines on the checks indicated that the money was for "food expense." Gov't Ex. C-506 at 154, 176.



Inspiring Youth and Outreach was registered with the Minnesota Secretary of State on February 2, 2021. Gov't Ex. C-496. Within a matter of weeks, the entity claimed to be serving meals to more than 1,000 children per day. *See, e.g.*, Gov't Ex. C-498, C-501, C-504. The site later claimed to be serving meals to 2,500 children per day. Gov't Ex. C-501.



As Forensic Accountant Roase testified at trial, Inspiring Youth and Outreach

14

received more than $1.5 million in federal child nutrition program funds from Feeding Our Future in 2021. Almost none of this money was spent on food. Instead, it was sent to entities created and used to receive the proceeds of the fraud scheme, including Afrique and Star Distribution, a company created by Ikram Mohamed's brother and used to receive and launder fraud proceeds.

**Inspiring Youth & Out Reach LLC**
**Bank of America, Checking Account #374000450771**
**Review Period: 3/2/2021 (Opened) to 12/31/2022** *(No activity since 11/2022)*

*Deposits from 3/2/2021 to 12/29/2021*

| SOURCES OF FUNDS | Total Deposits |
|---|---|
| Feeding Our Future | $ 1,558,861.86 |
| Cash | $ 100.00 |
| Other Expense - Returns | $ 6.00 |
| **Grand Total*** | **$ 1,558,967.86** |

*Uses from 3/11/2021 to 11/7/2022*

| USES OF FUNDS | Total Withdrawals |
|---|---|
| Star Distribution LLC | $ (1,011,180.24) |
| Afrique Hospitality Group LLC | $ (169,390.95) |
| Broadway Halal Market | $ (92,525.00) |
| GIF Properties LLC | $ (70,000.00) |
| Shakur Abdisalam | $ (62,500.00) |
| Individuals | $ (46,576.00) |
| S&S Catering | $ (37,520.33) |
| IM Consultation LLC | $ (21,000.00) |
| Other Expense | $ (16,737.64) |
| Cash | $ (5,506.00) |
| Travel Expense - Wisconsin Dells | $ (3,951.66) |
| Amaden Abdinur | $ (3,750.00) |
| School Age Consultants LLC | $ (2,800.00) |
| Food Expense | $ (223.80) |
| **Grand Total*** | **$ (1,543,661.62)** |

Shariff also received $139,000 from Active Mind's Youth, an entity created by Ikram Mohamed's mother on February 4, 2021, and used as part of the scheme to fraudulently obtain federal child nutrition program funds. Gov't Ex. C-486. Five days before the company was even registered with the Minnesota Secretary of State—and before the company had a bank account—it claimed to be serving meals to more than 2,000 children per day staring on January 31, 2021. Gov't Ex. C-488.

The Active Mind's bank account was not opened until March 25, 2021. Gov't Ex. C-392. When it was, account records show that the account was used solely to receive federal child nutrition program funds from Feeding Our Future—and that those funds were not used to purchase food but instead to distribute money to other entities involved in the fraud scheme, including Star Distribution, Dua Supplies & Distribution,[5] S & S Catering,[6] and Afrique. Gov't Ex. 491.

---

[5]    The owner of Dua Supplies & Distribution has pled guilty for her role in the fraud scheme. *United States v. Farhiya Mohamud*, 22 CR 226(5) (NEB/DTS).

[6]    The owner S & S Catering has pled guilty for her role in the fraud scheme as have several other individuals involved with S & S Catering. *See United States v. Qamar Ahmed Hassan,* 22 CR 224 (NEB/DTS).

16

Active Mind's Youth LLC
Bank of America, Checking Account #374000546274
Period of Review: 3/25/2021 (Opened) to 7/31/2022

*Deposits from 3/25/2021 to 7/1/2021*

| SOURCES OF FUNDS | Total Deposits | | USES OF FUNDS | Total Withdrawals |
|---|---|---|---|---|
| Feeding Our Future | $ 1,062,512.76 | | Star Distribution LLC | $ (471,148.69) |
| Grand Total | $ 1,062,512.76 | | Dua Supplies & Distribution Inc. | $ (196,146.15) |
| | | | Afrique Hospitality Group LLC | $ (139,042.26) |
| | | | Individuals | $ (101,270.00) |
| | | | S&S Catering Inc. | $ (62,480.06) |
| | | | IM Consultation LLC | $ (38,500.00) |
| | | | Gak Properties LLC | $ (25,000.00) |
| | | | Food Expense | $ (15,635.00) |
| | | | Fadumo Yusuf | $ (3,800.00) |
| | | | Other Expense | $ (2,446.52) |
| | | | Grand Total | $ (1,055,468.68) |

Shariff deposited into the Afrique account three checks totaling more than $139,000 from Active Mind's Youth purportedly for the purchase of food from Afrique. Gov't Ex. C-392 at 134, 137, 207.



Shariff and Afrique also purportedly sold $96,000 worth of "food" to United Youth of MPLS, an entity in December 2020 for use in carrying out the fraudulent scheme to obtain federal child nutrition program funds. Gov't Ex. C-559. At times, United Youth of MPLS claimed to be serving meals to more than 2,600 children per day. *See, e.g.*, Gov't Ex. C-556 and C-557.

FEEDING OUR FUTURE

## AFTERSCHOOL MEAL COUNTS — CLICKER

| Sponsor | FEEDING OUR FUTURE | Email | claims@feedingourfuturemn.org | | Phone | 612.345.4922 |
| Site | UNITED YOUTH OF MINNEAPOLIS | Supervisor | AISHA HUSSEIN | | Week of | June 6th |
| Meal Type | SUPPER | | | SNACK | | |

| Available Meals | Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday | TOTAL |
|---|---|---|---|---|---|---|---|---|
| Number of meals received/prepared | 2632 | 2632 | 2632 | 2632 | 2632 | 2632 | | |
| Number of meals from yesterday | 0 | 0 | 0 | 0 | 0 | 0 | | |

| Meal Counts | Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday | TOTAL |
|---|---|---|---|---|---|---|---|---|
| Number of firsts served to children | 0 | 0 | 0 | 0 | 0 | 0 | | |
| Number of second meals served to children (not reimbursed) | 0 | 0 | 0 | 0 | 0 | 0 | | |
| Number of meals served to program adults (not reimbursed) | 0 | 0 | 0 | 0 | 0 | 0 | | |
| Number of meals served to non-program adults (not reimbursed) | 0 | 0 | 0 | 0 | 0 | 0 | | |
| Number of children requesting meals of food is gone | 0 | 0 | 0 | 0 | 0 | 0 | | |

| Food | Sunday | Monday | Tuesday | Wednesday | Thursday | Friday | Saturday | TOTAL |
|---|---|---|---|---|---|---|---|---|
| FOOD TEMPERATURE | — | — | — | — | — | — | | |
| Number of non-reimbursable, incomplete or damaged meals | 0 | 0 | 0 | 0 | 0 | 0 | | |
| Number of leftover meals | 0 | 0 | 0 | 0 | 0 | 0 | | |
| Initials of person taking daily meal count certifying that the information is true and accurate | AH | AH | AH | AH | AH | AH | | |

| SITE SUPERVISOR: By signing, I certify that the above information is true and accurate. | | |
|---|---|---|
| Signature | Aisha H | Date  6/11/2021 |

Bank records show that United Youth of MPLS received more than $2.2 million in federal child nutrition program funds in 2021. Again, the bulk of this money was simply distributed among various entities created to receive and launder fraud proceeds, including Afrique. *See, e.g.*, Gov't Ex. C-568, C-569.

**United Youth of Mpls LLC**
**Woodlands National Bank, Checking Account #1206070**
**Review Period: 2/4/2021 to 7/31/2022** *(No activity since 4/2022)*

| SOURCES OF FUNDS | Total Deposits | | USES OF FUNDS | Total Withdrawals |
|---|---|---|---|---|
| Feeding Our Future | $ 2,284,901.50 | | Star Distribution LLC | $ (1,606,751.30) |
| Sharing & Caring Childcare | $ 5,000.00 | | IM Consultation LLC | $ (166,100.00) |
| Individuals | $ 100.00 | | Individuals | $ (126,253.75) |
| **Grand Total\*** | **$ 2,290,001.50** | | Afrique Hospitality Group LLC | $ (96,589.31) |
| | | | GIF Properties LLC | $ (57,200.00) |
| | | | Aisha Hussein | $ (56,500.00) |
| | | | GAK Properties | $ (46,800.00) |
| | | | Food Expense | $ (39,582.29) |
| | | | Dua Supplies & Distribution Inc. | $ (30,008.45) |
| | | | Amina Hussein | $ (13,700.00) |
| | | | Ardo Guled | $ (12,500.00) |
| | | | Afro Produce LLC | $ (10,665.56) |
| | | | Other Expense | $ (7,481.77) |
| | | | Abdullahe Jesow | $ (5,500.00) |
| | | | Sharing & Caring Childcare | $ (5,000.00) |
| | | | **Grand Total\*** | **$ (2,280,632.43)** |

United Youth of MPLS paid more than $96,000 to Shariff's company, Afrique. According to the memo line on the check, the money was for the purchase of food. Gov't Ex. C-569 at 54, 59.



Ikram Mohamed later circulated invoices from Afrique purporting to show that United Youth of MPLS had purchased food from Afrique. Gov't Ex. C-567. As with many of the invoices in the case, they appear to be fake insofar as there are multiple versions of that invoice with the same date (though bearing different line entries).



Shariff and Afrique also purportedly sold more than $440,000 worth of food to Star Distribution, a fake food distribution company created and used by Ikram Mohamed's brother, Suleman Mohamed, to receive and launder fraud proceeds. In all, Star Distribution received more than $10 million in federal child nutrition program funds from Feeding Our Future and other entities involved in the fraud scheme. Gov't Ex. C-570, C-571, and C-572. More than $448,000 of these funds were sent from Star Distribution to Afrique. *See* Gov't Ex. C-570.

**COMBINED Star Distribution LLC**
**Combined Period of Review: 2/25/2021 to 2/28/2023**

| SOURCES OF FUNDS | Total Deposits | | USES OF FUNDS | Total Withdrawals |
|---|---|---|---|---|
| Feeding Our Future | $ 4,943,109.32 | | Payments to Other Family Members | $ (2,045,974.44) |
| United Youth of Mpls LLC | $ 1,615,820.37 | | Afro Produce LLC | $ (1,681,790.95) |
| Inspiring Youth & Out Reach LLC | $ 1,011,180.24 | | Individuals | $ (1,260,764.55) |
| Youth International Club | $ 717,052.13 | | Suleman Yusuf Mohamed | $ (1,230,176.00) |
| Active Mind's Youth LLC | $ 471,148.69 | | Taxes | $ (799,582.00) |
| New Vision Foundation | $ 325,800.89 | | Cash | $ (526,761.00) |
| St. Paul Madina Academy | $ 283,284.55 | | Food Expense | $ (480,695.05) |
| Academy for Youth Achievements | $ 226,865.33 | | Afrique Hospitality Group LLC | $ (448,040.15) |
| Rattil Center LLC | $ 146,478.95 | | Transportation and Logistics Companies | $ (430,450.52) |
| Minneapolis Youth and Family Services | $ 126,080.00 | | Other Expense | $ (377,909.94) |
| Legal Expense - Returned | $ 110,000.00 | | Assets - Construction Expense | $ (273,403.23) |
| Mako Childcare Center | $ 96,360.56 | | Metro Consulting Services | $ (205,887.17) |
| Masha Allah Tabarag | $ 64,790.15 | | Assets - Vehicle Expense | $ (168,587.46) |
| Suleman Yusuf Mohamed | $ 37,219.00 | | Legal Expense | $ (150,000.00) |
| Empire Cuisine and Market LLC | $ 25,650.00 | | The Produce LLC | $ (80,000.00) |
| Bushra Wholesalers LLC | $ 25,650.00 | | Haji's Kitchen LLC | $ (74,750.00) |
| New Immigrant Family Org | $ 25,000.00 | | Feeding Our Future | $ (65,000.00) |
| The Produce LLC | $ 24,000.00 | | Travel Expense | $ (21,015.41) |
| Nur Consulting LLC | $ 20,000.00 | | Bridge Logistics LLC | $ (14,000.00) |
| Youth Mentorship Program | $ 18,000.00 | | **Grand Total*** | **$ (10,334,787.87)** |
| Aaron Child Care | $ 17,000.00 | | | |
| Assets - Construction Expense | $ 1,391.79 | | | |
| Food Expense | $ 990.72 | | | |
| Other Expense | $ 609.03 | | | |
| Other Income | $ 260.00 | | | |
| Individuals | $ 54.04 | | | |
| **Grand Total*** | **$ 10,333,795.76** | | | |

## 1. The PSR correctly found that Shariff is responsible for the entire loss caused by the conspiracy

Shariff makes two arguments with respect to the loss amount. First, he argues that he should only be responsible for fraudulent claims related to the Dar al Farooq site and two other sites for which Shariff specifically submitted fraudulent claims and not the total amount of loss he and his co-conspirators caused through all their various entities and sites. Second, he argues that the loss amount is overstated and should be reduced based on the food purchased, and meals provided, by the defendants. Both arguments fail.

Despite the fact that he and his co-conspirators obtained well more than $40 million in federal child nutrition program funds, Shariff argues that his loss figure

under the Guidelines should be limited to the fraudulent claims related to the Dar al Farooq site and two other sites for which Shariff specifically submitted fraudulent claims. In effect, he is asking the Court to ignore the fact that he participated in a massive conspiracy and fraudulent scheme through which he has his co-conspirators took home more than $40 million in fraud proceeds. This the Court should not do. It is black letter law that defendants are responsible for the reasonably foreseeable actions of their co-conspirators. Here, Shariff joined and participated in a massive fraud scheme through which he and his co-conspirators made tens of millions of dollars over a brief 18-month period. Shariff not only submitted fraudulent claims for the single largest fraudulent food site operated within the conspiracy, he also created and used Afrique to receive and launder fraud proceeds for all of the entities involved in the scheme, including ThinkTechAct Foundation ($1.7 million), Feeding Our Future ($1.1 million), Empire Cuisine and Market/Empire Enterprises ($800,000), Saint Cloud Somali Athletic Club ($260,000), and Bushra Wholesalers ($69,000). *See* Gov't Ex. M-6. In addition, and as explained above, Shariff used Afrique to receive and launder fraud proceeds for several other entities involved in the fraudulent receipt of federal child nutrition program funds, including Cosmopolitan Business Solutions ($480,000), Star Distribution ($440,000), Inspiring Youth and Outreach ($169,000), Active Mind's Youth ($139,000), and United Youth of MPLS ($96,000).[7] *Id.* In light of the scope and extent of Shariff's involvement in the fraud scheme, the

---

[7] Because Shariff used Afrique to aid these other entities in their fraudulent scheme, he should arguably be responsible for the losses caused by those entities, which collectively included an additional $50 million.

idea that he should not be responsible for the full scope of that fraud scheme is
absurd.

      **2.**      **The loss amount far exceeded $25 million even if the Court credits all money spent on food, even the money spent on food unrelated to the federal child nutrition program**

The Sentencing Guidelines allow for credits against loss in certain situations.
The Guidelines provide that the loss shall be reduced by the "fair market value . . . of
services rendered by the defendant or other persons acting jointly with the defendant,
to the victim before the offense was detected." Guidelines § 2B1.1, app. Note 3(E)(i).
The advisory notes further provide that in cases involving government benefits, such
as grants, loans, or entitlement program payments, the loss "shall be considered to
be not less than the value of the benefit . . . diverted to unintended uses." Guidelines
§ 2B1.1, app. note 3(F)(ii).

Here, the government disagrees that the loss figure should be reduced based
on the value of the food actually provided by the defendants. As the Court heard at
trial, the defendants served some food, but mainly as window dressing for their fraud
scheme. And when they did so, they did not do so in a manner consistent with the
rules of the federal child nutrition program. Even with the Covid waivers, the federal
child nutrition program had rules about what qualified as a reimbursable meal. As
MDE employee Emily Honer testified, even with the waivers, the program generally
did not allow for the service of bulk groceries, such as onions, potatoes, and uncooked
rice. In those circumstances where it did, the program required the food to be served
or delivered with instructions and appropriate measurements so that a child could
prepare a meal from the food provided. That did not happen here. Instead, much of

the food was simply bulk groceries, such as onions, potatoes, and rice—not meals suitable and intended for children. As Honer testified, MDE would not have approved defendants' claims and paid out federal child nutrition program reimbursement funds had they been aware of how defendants were operating. In other words, while the defendants may have served some food, they did not do so in a manner that benefited MDE or the federal child nutrition program. Accordingly, the government does not believe they should receive credit for the food they purchased or distributed, in essence, to make it look good.

In deciding whether a defendant receives credit against loss, courts look to a defendant's subjective intent. That is, courts look to whether the items provided were provided in good faith, rather than to further the fraud scheme by, for example, lulling a victim into a false sense of complacency. *See, e.g.*, *United States v. Hartstein*, 500 F.3d 790, 797-98 (8th Cir. 2007); *United States v. Hatchett*, 622 F.3d 984, 987-88 (8th Cir. 2010) (same). Here, as the Court heard at trial, the defendants did not enroll in the federal child nutrition program to feed children. They did so to get rich. Indeed, the Court saw how members of the conspiracy describe the food program as a "golden ticket." Gov't Ex. H-54a at 4.



Similarly, in a text message exchange, Shariff's co-defendants Abdiaziz Farah and Abdimajid Nur discussed social media posts in which the "youth of Dar al Farooq" accused Shariff of being the "master mind" of a scheme to use the names of youth basketball players to defraud the federal child nutrition program.

> **ATTENTION PARENTS!!**                                                       1/2
>
> Minnesota Youth Connection aka MYC has committed fraud. MYC was a cover up basketball program to help the youth. Reality is that this was a hidden agenda to help collect names of the participants of this basketball program. Along with this they have collected the names of every players siblings names which had nothing to do with basketball. These names were used to con the federal government of a federal budget through a federal Covid 19 food program relief aka UADEEG.
>
> Parents, your children have been exploited and used. These kids are all minors and these people can not ask for information without a parent present. They took advantage of the point that you guys may not be english speakers or that it's simply just a basketball program to help your kid.
>
> The master minds of these acts are Mukhtar Shariff aka Nomadic Hustle and Mohamed Omar aka Arab. Please check your names for any of your kids with the government or ask these to men personally two confirm.

The Court also saw Shariff and his co-conspirators talking about using federal child nutrition program funds to build a for-profit community center and co-working space (Gov't Ex. 110 at 9) and purchase real estate and construct condo buildings in Kenya. See, e.g., Gov't Ex. H-50b (Shariff and Abdiaziz Farah discussing the

opportunity to build "Afrique apartments" and "Empire apartments" on land Abdiaziz Farah had purchased in Nairobi, Kenya). There was little or no discussion of children.

Because the food defendants served was little more than window dressing, the Court should not credit defendants for any food they provided.

That being said, even if the Court credits defendants for all money spent on food, the loss amount far surpasses the $25 million benchmark that triggers the 22-level enhancement under Guidelines § 2B1.1(b)(1)(L). This is true even if the Court credits funds used to purchase food to sell at the halal market and deli, which had nothing to do with the federal child nutrition program, and for other entities beyond the scope of the actions charged in this indictment.

Finally, Shariff argues that the Sentencing Guidelines put too much emphasis on the amount of the loss caused by the fraud scheme. The government disagrees. Setting aside his general criticism of the Sentencing Guidelines, this case is hardly one where the loss amount overstates the severity of the crime. Shariff participated in one of the most despicable and notorious fraud schemes in recent memory. He and his co-conspirators took advantage of a once-in-a-century global pandemic to steal money intended to be used to feed disadvantaged children. That Shariff does not recognize the immorality of his crime is reason enough to impose a significant sentence.

## C.    The PSR Correctly applied a 2-level enhancement because Shariff misrepresented that he was acting on behalf of a charitable, educational, or religious organization

The PSR correctly found that Shariff receives a 2-level offense level enhancement under Guidelines § 2B1.1(b)(9)(B) because he misrepresented that he

acted to obtain a benefit on behalf of a charitable, educational, or religious organization when, in fact, the defendant to divert all or part of that benefit for his personal gain. The plain language of this enhancement applies here—where Shariff purported to be submitting claims for a federally funded child nutrition program on behalf of a religious or educational organization—namely, Dar al Farooq. Indeed, throughout his trial testimony, Shariff claimed that he was working with and for Dar al Farooq to serve food to children. In reality, he diverted much of the resulting federal child nutrition program funds for his own benefit and that of his co-conspirators.

### D. The PSR correctly found that Shariff was an average participant in the scheme

The PSR correctly found that Shariff was an average participant in the fraud scheme and that he was not entitled to a role reduction under Guidelines § 3B1.2.

Guidelines section 3B1.2 provides that defendants who played a minor or minimal role in the offense may receive an offense level reduction. The application notes explain that the reduction is for "a defendant who plays a part in committing the offense that makes him substantially less culpable than the average participant in the criminal activity." Guidelines § 3B1.2, application note 3. In the fraud context, the application notes provide an example of "a defendant in a health care fraud scheme, whose participation in the scheme was limited to serving as a nominee owner and who received little personal gain relative to the amount." *Id.*

That is a far cry from the facts of this case. As explained above, Shariff was extensively involved in the fraud scheme. He ran the largest food site. He signed and

submitted fraudulent meal counts. And he received and laundered fraud proceeds for his co-conspirators and others involved the fraud scheme. Therefore, he is not entitled to a minor role reduction even if he was less involved in the fraud than some of his co-defendants. *United States v. Ponce*, 311 F.3d 911, 913 (8th Cir. 2002) ("The mere fact that a defendant is less culpable than his co-defendants does not entitle defendant to 'minor participant' status.").

### E.    The Court should not depart from the Guidelines range

Finally, Shariff asks the Court to depart from the Guidelines range, including based on the extended uncertainty he has faced during the investigation and since his post-conviction confinement. Dkt. #667 at 29-32. This is not grounds for a downward departure. The "uncertainty" Shariff has faced is due to his own involvement in a notorious and shameful fraud scheme—one that took advantage of a government program designed to feed hungry and disadvantaged children. Shariff was a full participant in that scheme. After being caught, he testified falsely at his trial, denying his guilt and attempting to portray himself as a well-intentioned civic leader. He was no such thing. During the trial, Shariff flagrantly violated the Court's rules and basic courtroom decorum by recording hours and hours of witness testimony on his cell phone.

His co-defendants attempted to corrupt our judicial system by bribing a trial juror with $120,000 in cash in exchange for returning an unjustified not guilty verdict. Despite his denials of knowledge of that scheme, Shariff knew of it before it came to light. Abdiaziz Farah told him about the bribe shortly after it happened. Farah even sent Shariff a video recording of Ladan Ali delivering the bribe to the

juror's house. Because Shariff deleted his messaging application in an attempt to conceal his knowledge of the bribe plot, the government only recovered Abdiaziz Farah's side of the conversation. But even one-sided, the conversation is chilling.

| | |
|---|---|
| 9:52 p.m. | Bro |
| 9:54 p.m. | Alx Bro. This is our life. Inshallah I will do my best bro. Also do you know how to clear blurry videos. |
| 9:55 p.m. | It was taken from the car when it was raining. |
| | Ok bro let me know. The video is on my other phone. |
| 9:58 p.m. | That's where she usually sits everyday…this was scoped out by my guy [sent along with a photo] |
| 10:14 p.m. | He is gonna send someone to drop off some $. That's their priority. |
| | 200 upfront for any movement |
| 10:18 p.m. | Mistrial which is great for us than a conviction |
| | If he can come through we got the surety |
| | Not that we will be but it's probability here we are playing with |
| 10:26 p.m. | 100 for our freedom is nothing bro, worth trying everything bro |
| 10:29 p.m. | That's it bro. I have a good feeling she will come through and that's a lot of money for her family. |
| | Cash bro |
| 10:35 p.m. | It's a team effort bro |
| 10:37 p.m. | I am not worried bro. I shared because I trust bro don't worry about that stuff." |
| 11:01 p.m. | Get some sleep man. You got judge Nancy . . . waiting for you |

11:08 p.m.    Ameen bro. She is a terrible human being. My wife and siblings stopped coming to court coz they couldn't stand her

11:14 p.m.    She is still a G employee who is jealous of all of us. InshaAllah it will be smooth bro! Goodnight bro.

As court began the following morning, the government immediately announced the bribe attempt and moved to take Shariff and his co-defendants into custody. At the government's request, the Court directed the defendants to turn their cell phones over to the FBI case agent.

As this was happening, Shariff and his co-defendants took steps to delete the incriminating evidence from their phones.

At 8:31 a.m., Abdimajid Nur uninstalled and deleted the Signal encrypted message app from his iPhone.

At 8:41 a.m., Abdiaziz Farah did a factory reset of his iPhone.

At 8:43 a.m., Mukhtar Shariff uninstalled and deleted the Signal encrypted messaging app from his iPhone.

For his part, Said Farah deleted the incriminating Signal messages from his phone one at a time.

This is who Mukhtar Shariff is. He participated in two of the most brazen and notorious crimes in Minnesota history. For his crimes, the government asks the Court to impose a sentence of 262 months in prison, which is the top of the Guidelines range.

## II.    CONCLUSION

For the reasons stated above, the government respectfully requests that the Court impose a sentence of 262 months in prison.


Respectfully Submitted,

Dated: January 22, 2025                    LISA D. KIRKPATRICK
                                           Acting United States Attorney


                                            /s/ Joseph H. Thompson
                               BY:    JOSEPH H. THOMPSON
                                      HARRY M. JACOBS
                                      MATTHEW S. EBERT
                                      DANIEL W. BOBIER
                                      Assistant U.S. Attorneys